IN THE SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Supreme Court |
| | ) | No. CR 01-0045-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| | ) | No. 1 CA-CR 99-0837 |
| v. | ) | |
| | ) | Maricopa County |
| LARRY LAVELLE GIBSON, | ) | Superior Court |
| | ) | No. CR 96-07148 |
| Appellant. | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court of Maricopa County

The Honorable Gregory H. Martin, Judge

**REMANDED FOR NEW TRIAL**

_____

Court of Appeals, Division One
Memorandum Decision
**REVERSED**

_____

JANET NAPOLITANO, Attorney General                              Phoenix
  by  Ginger Jarvis, Assistant Attorney General,
     Criminal Appeals Section
Attorneys for Appellee

MARICOPA COUNTY PUBLIC DEFENDER                                 Phoenix
  by  Charles R. Krull, Deputy Public Defender
Attorneys for Appellant

_____

**C O R C O R A N, Justice (Retired)**

## 1. Introduction

¶1        In 1995, Larry Lavelle Gibson (defendant) was charged with first degree murder for a 1974 murder.  Prior to trial, defendant gave notice of his intent to introduce evidence that other persons had committed the crime.  *See* Rule 15.2(b), Arizona Rules of Criminal Procedure.  At a pretrial hearing, the trial court granted the state's motion precluding evidence that someone else might have committed the murder.  After a 7-day trial, a jury convicted defendant of first degree murder.  Defendant was sentenced to life imprisonment.  On direct appeal, defendant contended that the trial court erred in precluding evidence of third-party culpability.  In a split decision, the court of appeals affirmed.  We granted review to clarify the appropriate test for admission of third party culpability evidence.  We have jurisdiction pursuant to Arizona Constitution, article 6, § 5(3), and A.R.S. § 13-4031.

## 2. Factual and Procedural History

**(a) *1974 Investigation***

¶2        On January 15, 1974, two Phoenix police officers arrived at 17 East Thomas Road and found the body of Taylor Courtney inside apartment 13.  The cause of death was three gunshot wounds to the head.  Officials estimated the death had occurred six days earlier.

2

The body had been brutalized by the post mortem removal of his penis, scrotum, and testes. Further investigation uncovered numerous fingerprints, some bloody, in and around the apartment and inside the victim's car.

¶3        During the investigation, two individuals, D.B. and J.W., were identified as primary suspects. Both told officers they had been with the victim shortly before the murder. Both gave alibis that could not be corroborated. Both knew substantial information about the crime scene which had not previously been made public. D.B. pointed to J.W. as the possible perpetrator because of an alleged sexual relationship between the victim and J.W.'s wife. J.W. suffered severe mental health problems shortly after the murder, and police officers noted D.B. was acting extremely nervous during an interview.

¶4        The victim, D.B., and J.W. were all from the same small Arizona town. Defendant was also from that same town. However, during the 1974 investigation, officers did not interview, nor suspect defendant, or know of his existence.

**(b) *1995 Investigation***

¶5        The case lay dormant until 1995 when officers, with the help of the Automated Fingerprint Identification System (AFIS), matched one of the non-bloody fingerprints lifted from the inside of the front screen door of the victim's apartment with that of

3

defendant. Defendant was interviewed and denied going to the victim's apartment and killing the victim.

¶6 From April to June 1996, Defendant's ex-wife was interviewed by police officers on several occasions. She told officers about a package defendant had given her two months after the murder. Over the course of the interviews, her recollection of the contents of this package evolved from liver to a poultry neck to a penis. Defendant was then charged with the murder.

¶7 At a pretrial hearing, defendant argued that in light of the limited circumstantial evidence against defendant, the court should allow evidence of D.B.'s and J.W.'s potential involvements, specifically: (1) the times at which D.B. and J.W. last saw the victim, (2) the false alibis, (3) their overwhelming knowledge about the crime scene which had not yet been made public, (4) the extreme nervousness of D.B., and (5) J.W.'s mental health issues after the murder. The trial court precluded all inculpatory evidence about D.B. and J.W. In his ruling, the trial judge stated, "there is nothing in the defendant's proffer that has an inherent tendency to connect either D.B. or J.W. with the actual commission of the murder of the victim. Admitting the evidence . . . has the real potential to unfairly prejudice the State and to confuse the jury."

¶8 At trial defendant was convicted, and on appeal he argued that preclusion of evidence pointing to D.B. and J.W. was

4

inappropriate. The court of appeals held there was no abuse of discretion because the evidence did not have an inherent tendency to connect either D.B. or J.W. with the murder.

### 3. Discussion

¶9     The court of appeals used an "inherent tendency" test, which it apparently took from our decision in *State v. Fulminante*, 161 Ariz. 237, 778 P.2d 602 (1988). In *Fulminante* we stated,

> Before a defendant may introduce evidence that another person may have committed the crime, the defendant must show that the evidence has an inherent tendency to connect such other person with the actual commission of the crime. Vague grounds of suspicion are not sufficient.

161 Ariz. 237, 252, 778 P.2d 602, 617 (quoting *State v. Williams*, 133 Ariz. 220, 231, 650 P.2d 1202, 1213 (1982)).

¶10     We do not find, and this court did not intend, a special standard or test of admissibility to be gleaned from *Fulminante*.

¶11     In *Fulminante* the defendant was charged with the murder of his 11-year-old stepdaughter. The defendant attempted to introduce evidence that a neighbor of the victim drove a motorcycle, owned a .357 magnum handgun, previously attempted to kill a police officer, and was suspected of committing crimes against children. The trial court precluded the evidence, and the defendant was found guilty and sentenced to death. On the issue of third-party culpability evidence, we stated that the evidence of the neighbor's ability to commit the crime was insufficient by

5

itself to connect the neighbor with the murder and therefore found there was no abuse of discretion. *See Fulminante*, 161 Ariz. at 252, 778 P.2d at 617.

¶12     The appeal before us presents the opportunity to clarify the manner of determining admissibility of evidence of third-party culpability. The appropriate analysis is found in Rules 401, 402, and 403, Arizona Rules of Evidence.

¶13     Initially, the court must determine if the proffered evidence is relevant. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401. "All relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." Rule 402. Once the evidence is determined relevant, it is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403.

¶14     We note that *Fulminante* did not make reference to Rules 401, 402, or 403.

**(a) *Rules 401 and 402***

¶15     We find the discussion in *Winfield v. United States*, 676

A.2d 1 (D.C. 1996), particularly helpful in analyzing relevancy of third-party culpability evidence in a criminal context. In *Winfield,* the court addressed similar concerns regarding a "clear link" standard of third-party culpability evidence. That court rejected the "clear link" standard because it put the focus on the *third party's* guilt or innocence. *See* 676 A.2d at 4. The court then concluded that the proper focus should be on "the effect the evidence has upon the defendant's culpability" and the evidence "need only tend to create a reasonable doubt that the defendant committed the offense." 676 A.2d at 4 (quoting in part *Johnson v. United States*, 552 A.2d 513, 516 (D.C. 1989)).

¶16      Similarly, we find the use of the phrase "inherent tendency" unhelpful and agree with Judge Gerber's description of inherent tendency in his dissent:

> This language is unclear to a fault: for one thing, a "tendency" does not "inhere"; for another, such tendency seems a matter of weight and credibility of evidence. Whatever its meaning, this rule forces a defendant to prove to a judge's satisfaction that another person "really" committed the crime or was "largely" connected to it.

The proper focus in determining relevancy is the effect the evidence has upon the *defendant's* culpability. To be relevant, the evidence need only *tend* to create a reasonable doubt as to the defendant's guilt.

**(b)** *Rule 403*

7

¶17        When applying the balancing test under Rule 403, ARIZONA

PRACTICE: LAW OF EVIDENCE should be considered:

> [I]t is first necessary to assess the probative value of
> the evidence on the issue for which it is offered.  The
> greater the probative value, of course, and the more
> significant in the case the issue to which it is
> addressed, the less probable that factors of prejudice or
> confusion can substantially outweigh the value of the
> evidence.  If the issue is not in dispute, or if other
> evidence is available of equal probative value but
> without the attendant risks of the offered evidence, then
> a greater probability of substantial outweighing exists.
> Because this is a weighing of factors that cannot easily
> be quantified, substantial discretion is accorded the
> trial judge . . . .
>
> The remaining factors in Rule 403, confusion of the
> issues, misleading the jury, and wasting of time, are
> less frequently the subject of judicial decision.
> Wigmore described them well:
>
> > The notion here is that, in attempting to
> > dispute or explain away the evidence thus
> > offered, new issues will arise as to the
> > occurrence of the instances and the similarity
> > of conditions, new witnesses will be needed
> > whose cross-examination and impeachment may
> > lead to further issues; and that thus the
> > trial will be unduly prolonged, and the
> > multiplicity of minor issues will be such that
> > the jury will lose sight of the main issue,
> > and the whole evidence will be only a mass of
> > confused data from which it will be difficult
> > to extract the kernel of controversy.

1 Joseph M. Livermore, Robert Bartels, & Anne Holt Hameroff, ARIZONA

PRACTICE:  LAW OF EVIDENCE (formerly UDALL ON EVIDENCE) § 403 at 82-83,

84-86 (4th ed. 2000) (footnotes omitted) (quoting 2 WIGMORE ON EVIDENCE

§ 443 at 528-529 (Chadbourn rev. 1979)); *see also* 1 MCCORMICK ON

EVIDENCE § 185 at 779-785 (4th Kenneth S. Broun ed. 1992).

¶18     The New York Court of Appeals recently dealt with an issue similar to that in *Fulminante*.  *People v. Primo*, like *Winfield*, dealt with a coordinate catch phrase:  "clear link." *Primo* said:

> To the extent that the "clear link" standard implies no more than an abbreviation for the conventional balancing test, it presents no problem.  A review of clear link cases reveals that the courts would very likely have made the same ruling regardless of the nomenclature.  "Clear link" and similar coinages, however, may be easily misread as suggesting that evidence of third-party culpability occupies a special or exotic category of proof.

753 N.E.2d 164, 168, 728 N.Y.S.2d 735, 739 (2001).

### 4. Conclusion

¶19     We hold that Rules 401, 402, and 403, Arizona Rules of Evidence, set forth the proper test for determining the admissibility of third-party culpability evidence.  This test must be applied anew to the facts in each case.

¶20     The judgment of the court of appeals is therefore reversed.  The case is remanded for a new trial not inconsistent with this opinion.

_____
Robert J. Corcoran, Justice (Retired)

CONCURRING:

_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Stanley G. Feldman, Justice


_____
Thomas A. Zlaket, Justice


NOTE: Due to a vacancy on this court and pursuant to Ariz. Const. art VI, § 3, the Honorable Robert J. Corcoran, Justice (Retired) was designated to sit with the court in the disposition of this matter.