SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-10-0242-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division Two |
| | ) | No. 2 CA-CR 08-0205 |
| LOUIE THOMAS MACHADO, | ) | |
| | ) | Pima County |
| Appellant. | ) | Superior Court |
| | ) | No. CR20063933 |
| | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Pima County
The Honorable Frank Dawley, Judge Pro Tempore

**REVERSED AND REMANDED**
_____

Opinion of the Court of Appeals, Division Two
224 Ariz. 343, 230 P.3d 1158 (App. 2010)

**AFFIRMED**
_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                Phoenix
    By   Kent E. Cattani, Chief Counsel,
         Criminal Appeals/Capital Litigation Section
         David A. Sullivan, Assistant Attorney General    Tucson
Attorneys for State of Arizona

ROBERT J. HIRSH, PIMA COUNTY PUBLIC DEFENDER             Tucson
    By   M. Edith Cunningham, Assistant Public Defender
         David J. Euchner, Assistant Public Defender
         Lisa M. Hise, Assistant Public Defender
Attorneys for Louie Thomas Machado
_____

**H U R W I T Z**, Vice Chief Justice

¶1     This case requires us to apply the Arizona Rules of Evidence to "third-party culpability" evidence – evidence offered by a defendant to show that someone else committed the crime. We conclude that the evidence at issue should have been admitted.

## I.

¶2     On October 25, 2000, sixteen-year-old Rebecca R. drove home alone from a church party. After Rebecca pulled into the driveway of her mother's house, a neighbor heard her arguing with a male, stating that she did not want to go with him. A shot rang out and Rebecca died shortly thereafter from a gunshot wound.

¶3     Investigators initially focused on Jonathan H. as a suspect. Jonathan was a classmate of Rebecca's and the boyfriend of her best friend, Laura. He had threatened to kill Rebecca and Laura two weeks earlier for attempting to resolve a dispute between him and Laura's ex-boyfriend.

¶4     Almost a month after the shooting, Rebecca's family received a telephone call. The caller did not identify himself, but said he knew the family through Rebecca. He related details of the shooting that were not publicly known and said he had accidentally killed Rebecca because he was mad at her and she would not do what he wanted. The family members who heard the call said that the caller sounded like a "cold, cocky, and well-

spoken" young white male. Relying on this call, police obtained a warrant for a sample of Jonathan's voice. The police, however, lost the sample before it could be played for the family. Jonathan was never arrested or charged.

¶5        Several years later, the police investigation focused on a new suspect, Louie Thomas Machado. Machado's mother told police that he had confessed to the murder and had mentioned corroborating details. Machado originally claimed that he had been with Rebecca when she was shot, but later retracted this statement. After Machado's photograph appeared on television, a neighbor of Rebecca's family told police he had seen Machado walking down the street immediately after the murder.

¶6        Machado was charged with Rebecca's murder. At trial, he contended that his mother had fabricated the confession, and she testified to that effect. Machado's principal defense was that Jonathan had committed the murder, and Machado proffered evidence in support of that defense.

¶7        The superior court admitted evidence of Jonathan's death threat to Rebecca and Laura, his inconsistent accounts of his whereabouts on the night of the murder, and a restraining order that a former girlfriend had obtained against Jonathan. The court, however, excluded testimony about other acts that Jonathan had committed, including the kidnapping of two girls at gunpoint; a road rage incident in which Jonathan pointed a gun

3

at others; and an assault conviction that resulted after Jonathan pointed a gun at a former girlfriend, threatened to kill her, and told her that he had killed before. The trial court also excluded evidence of the anonymous phone call and the subsequent police investigation. Machado was convicted of second-degree murder.

¶8 The court of appeals reversed. *State v. Machado*, 224 Ariz. 343, 365 ¶ 68, 230 P.3d 1158, 1180 (App. 2010). The court concluded that evidence about three incidents involving misconduct by Jonathan – the kidnapping, the road rage incident, and the assault – had been improperly excluded. *Id.* at 354-55 ¶¶ 25-27, 230 P.3d at 1169-70. It also held that evidence of the anonymous telephone call was admissible as a declaration against penal interest under Arizona Rule of Evidence 804(b)(3). *Id.* at 359 ¶ 44, 230 P.3d at 1174.

¶9 We granted review because the admissibility of third-party culpability evidence is a recurrent issue of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.

¶10 Arizona Rule of Evidence 404(b) provides that, subject to an exception not applicable here, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The

4

State argues that the superior court appropriately excluded evidence of the kidnapping, the road rage incident, and the assault under Rule 404(b). Machado, on the other hand, contends that Rule 404(b) does not apply to third-party culpability evidence.

¶11    Our prior cases give less than definitive guidance on this issue. In *State v. Tankersley*, this Court stated that Rule 404(b), which typically is implicated by the state's attempt to introduce other-acts evidence against a defendant, also "applies to other acts of third persons" offered by a defendant to show that someone else committed the crime charged. 191 Ariz. 359, 369 ¶ 39, 956 P.2d 486, 496 (1998). But in *State v. Gibson*, without mentioning Rule 404(b) or *Tankersley*, we held that "Rules 401, 402, and 403, Arizona Rules of Evidence, set forth the proper test for determining the admissibility of third-party culpability evidence." 202 Ariz. 321, 324 ¶ 19, 44 P.3d 1001, 1004 (2002). Shortly thereafter, citing *Gibson* and again not mentioning Rule 404(b), we stated that third-party culpability evidence "must simply be relevant and then subjected to the normal [Rule] 403 weighing analysis between relevance, on the one hand, and prejudice or confusion on the other." *State v. Prion*, 203 Ariz. 157, 161 ¶ 22, 52 P.3d 189, 193 (2002).

¶12    The court of appeals thus understandably characterized the law about admission of third-party culpability evidence as

"unsettled." *Machado*, 224 Ariz. at 356 ¶ 32, 230 P.3d at 1171. The court surmised that *Gibson* and *Prion* had implicitly overruled *Tankersley* "to the extent it holds such evidence may be precluded based on application of Rule 404(b)." *See id.* at ¶ 31. *But see State v Fish*, 222 Ariz. 109, 123 ¶ 42, 213 P.3d 258, 272 (App. 2009) (citing *Tankersley* and concluding that Rule 404(b) "applies to prior acts of . . . third parties"). Assessing the three incidents under Rules 401 through 403, the court of appeals concluded that the trial court erred in excluding this evidence. *Machado*, 224 Ariz. at 354-55 ¶¶ 25-27, 230 P.3d at 1169-70.[1]

¶13    The applicability of Rule 404(b) to third-party culpability evidence has divided the federal courts. Some federal courts of appeals hold that Federal Rule of Evidence 404(b) (upon which Arizona's rule was modeled) does not apply to such evidence. *See Wynne v. Renico*, 606 F.3d 867, 872-73, 873 n.3 (6th Cir. 2010) (Martin, J., concurring) (collecting cases). The Ninth Circuit, however, adheres to the opposite view, noting that the language of Rule 404(b) applies on its face to a "person," not simply a defendant. *United States v. McCourt*, 925

---

[1]    Even assuming that Rule 404(b) applied, the court of appeals concluded that the three incidents were admissible because they were offered to prove something other than the propensity of Jonathan to commit violent crimes. *Machado*, 224 Ariz. at 357 ¶ 34, 230 P.3d at 1172.

F.2d 1229, 1231 (9th Cir. 1991); *see also Tankersley*, 191 Ariz. at 369 ¶ 39, 956 P.2d at 496 (citing *McCourt*, 925 F.2d at 1231).

**¶14** In our view, the more convincing opinions have recognized that although the language of Rule 404(b) appears to apply universally, its central purpose is to protect criminal defendants from unfair use of propensity evidence. *United States v. Lucas*, 357 F.3d 599, 611-15 (6th Cir. 2004) (Rosen, J., concurring); *United States v. Aboumoussallem*, 726 F.2d 906, 911-12 (2d Cir. 1984). Rule 404(b) has its source in the common law, and the common law rule restricting the use of other-acts evidence was designed to prevent the defendant from being convicted simply because the jury might conclude from the other act that he was a "bad man." *Lucas*, 357 F.3d at 611 (Rosen, J., concurring).

**¶15** We recognized as much in *State v. Terrazas*, which held that other acts offered under Rule 404(b) against a criminal defendant must be proved by clear and convincing evidence. 189 Ariz. 580, 584, 944 P.2d 1194, 1198 (1997). Although Rule 404(b) does not expressly address the issue, we found the heightened burden of proof appropriate, because, despite cautionary instructions, "the introduction of a defendant's prior bad acts can easily tip the balance against the defendant." *Id.* (internal quotation marks omitted). The due process concerns cited in *Terrazas* do not militate for a higher

burden of proof when other-acts evidence is offered to exonerate a defendant.  Indeed, if Rule 404(b) were interpreted to exclude highly probative evidence that someone other than the defendant committed the crime, other due process concerns might be implicated.  *Cf. Chambers v. Mississippi*, 410 U.S. 284, 302-03 (1973) (holding that exclusion of third-party culpability evidence bearing "persuasive assurances of trustworthiness" violated the Due Process Clause).

¶16    We therefore make explicit today what the court of appeals found implicit in *Gibson* and *Prion*.  The admission of third-party culpability evidence is governed by the standards of Rules 401 through 403 of the Arizona Rules of Evidence, not by Rule 404(b).[2]  Ordinarily, we would next determine if the evidence here was properly excluded under those Rules.  At oral

---

[2]    As the court of appeals noted, a defendant may not, in the guise of a third-party culpability defense, simply "throw strands of speculation on the wall and see if any of them will stick."  *Machado*, 224 Ariz. at 357 ¶ 33 n.11, 230 P.3d at 1172 n.11 (quoting David McCord, *"But Perry Mason Made It Look So Easy!": The Admissibility of Evidence Offered by a Criminal Defendant to Suggest that Someone Else is Guilty*, 63 Tenn. L. Rev. 917, 984 (1996)) (internal quotation mark omitted). Evidence offered to establish the culpability of a third party is relevant under Rule 401 only when it "tend[s] to create a reasonable doubt as to the defendant's guilt."  *Gibson*, 202 Ariz. at 324 ¶ 16, 44 P.3d at 1004 (emphasis omitted).  And, as is the case with all relevant evidence, the trial court has discretion to exclude third-party culpability evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Ariz. R. Evid. 403.

8

argument, however, the State conceded that if Rule 404(b) does not apply, then the court of appeals correctly concluded that the probative value of the three excluded incidents was not substantially outweighed by the danger of unfair prejudice or confusion. We therefore affirm the opinion below insofar as it concludes that exclusion of this evidence was reversible error.

### III.

¶17     The superior court excluded the anonymous telephone call both as inadmissible hearsay and because it found any probative value substantially outweighed by the danger of unfair prejudice and confusion. The court of appeals rejected each of these holdings.

### A.

¶18     Because the statements in the telephone call were offered to prove that the caller, not Machado, killed Rebecca, they were plainly hearsay. *See* Ariz. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). The court of appeals, however, found that the call fell within the exception to the hearsay rule in Rule 804(b)(3) for statements against interest. *Machado*, 224 Ariz. at 359 ¶ 44, 230 P.3d at 1174. That Rule allows admission of a statement of an unavailable declarant that "so far tended to subject the declarant to civil or criminal

9

liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Ariz. R. Evid. 804(b)(3). If the statement tends to expose the declarant to criminal liability and is offered to exculpate the accused, its proponent must also show that "corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*

¶19 An anonymous statement would not typically qualify as a statement against penal interest under Rule 804(b)(3). By concealing his identity, the declarant seeks to protect himself from the consequences of admitting to a crime. Such a statement ordinarily would not tend to expose the declarant to criminal liability, as Rule 804(b)(3) requires. *See State v. Tucker*, 414 S.E.2d 548, 555 (N.C. 1992) (noting that "a declarant who conceals his identity does not tend to expose himself to criminal liability"). Most courts have accordingly found Rule 804(b)(3) inapplicable to anonymous statements. *See Clark v. Optical Coating Lab., Inc.*, 80 Cal. Rptr. 3d 812, 833-34 (Cal. Ct. App. 2008) (collecting cases); *State v. Kiser*, 284 S.W.3d 227, 265 (Tenn. 2009) (same).

¶20 However, both in its supplemental brief and at oral argument, the State conceded that the anonymous telephone call in this case was a statement against penal interest by the declarant. Presumably, the State did so because it obtained a

warrant for Jonathan's voice sample on the basis of the call, making it somewhat difficult to argue that the call did not tend to expose the declarant to criminal liability. *Cf. Bevers v. State*, 811 S.W.2d 657, 662-63 (Tex. Crim. App. 1991) (admitting anonymous calls when identity of caller could be readily determined).

¶21 The State has also understandably conceded the unavailability of the declarant. Thus the only contested issue is whether "corroborating circumstances clearly indicate the trustworthiness of the statement." Ariz. R. Evid. 804(b)(3). In addressing this issue, we "must examine any evidence that corroborates or contradicts the statement to find whether a reasonable person could conclude that the statement is true." *See State v. Harrod*, 200 Ariz. 309, 313 ¶ 16, 26 P.3d 492, 496 (2001), *vacated on other grounds*, 536 U.S. 953 (2002).

¶22 We conclude, as did the court of appeals, that the evidence in this case corroborates the statement. The caller stated that before the shooting, he waited by a white minivan parked near a neighbor's house. At the time of the crime, a white minivan was in fact parked nearby. The caller also stated that he saw Rebecca come home in a white Ford Escort. This detail was also correct, and the Escort had only recently been purchased. Neither of the facts described by the caller had been reported in the media.

11

**¶23**    Moreover, the primary goal of the corroboration requirement in Rule 804(b)(3) is to prevent criminal suspects from fabricating hearsay admissions to the crime by others. *See* Fed. R. Evid. 804(b)(3) Advisory Committee Note ("The requirement of corroboration should be construed in such a manner as to effectuate its purpose of circumventing fabrication."). Because Machado was not a suspect when the anonymous call was made, it seems unlikely that he was involved in any such fabrication, and nothing in the record suggests otherwise.

**B.**

**¶24**    Even if a statement falls under an exception to the hearsay rules, it also must be evaluated under the relevancy test of Rule 401 and the weighing analysis of Rule 403. The court of appeals concluded that "evidence about the telephone call had obvious, substantial probative value," *Machado*, 224 Ariz. at 358 ¶ 39, 230 P.3d at 1173, and the trial court acknowledged that the call might even be "super relevant," *id.* at ¶ 39 n.13. We agree. The caller admitted committing the crime, and there were powerful indications that Machado was not the caller. The caller referred to remarks made at Rebecca's funeral, which Machado did not attend. Rebecca's family members described the caller as a "well-spoken" young white male. Jonathan was Caucasian and well-spoken, while Machado was

12

Hispanic, had an accent, and used poor grammar.  The call thus "tend[s] to create a reasonable doubt as to the defendant's guilt."  *Gibson*, 202 Ariz. at 324 ¶ 16, 44 P.3d at 1004 (emphasis omitted).

¶25     The court of appeals also correctly concluded that the probative value of the telephone call was not substantially outweighed by the risk of confusion or unfair prejudice. *Machado*, 224 Ariz. at 358 ¶ 39, 230 P.3d at 1173.  As the court noted, the only issue in this case is whether Machado or someone else committed the murder.  The telephone call went directly to that issue and did not have the potential of distracting the jury from the central issues in the case.  *See Machado*, 224 Ariz. at 358 ¶ 39 n.14, 230 P.3d at 1173 n.14.  The court of appeals thus appropriately held that evidence of the telephone call should have been admitted.

## IV.

¶26     For the reasons above, we reverse Machado's conviction, affirm the opinion of the court of appeals, and remand to the superior court for further proceedings consistent with this opinion.

_____
Andrew D. Hurwitz, Vice Chief Justice

13

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice


_____
Michael D. Ryan, Justice (Retired)