ECKERSTROM, Presiding Judge,
dissenting.
¶ 22 This case requires us to grapple with the distinction between admissible third-party culpability evidence that “ ‘tend[s] to create a reasonable doubt as to the defendant’s guilt,”’ Machado, 226 Ariz. 281, ¶24, 246 P.3d at 636, quoting Gibson, 202 Ariz. 321, ¶ 16, 44 P.3d at 1004 (alteration in Macha-do ), and evidence representing mere “ ‘speculation’ ” that is properly excluded under the Arizona Rules of Evidence. Id. n. 2, quoting Machado, 224 Ariz. 343, n. 11, 230 P.3d at 1172 n. 11. In the present case, because I find the relevance and probative value of the proffered evidence to be apparent, I respectfully dissent from my colleagues’ view that the trial court properly excluded Alvarez’s third-party evidence in the midst of his trial.
¶ 23 Our supreme court recently reaffirmed that the admission of third-party culpability evidence is governed by Rules 401, 402, and 403, Ariz. R. Evid. Machado, 226 Ariz. 281, ¶ 16, 246 P.3d at 635. Under Rule 401, “the threshold for relevance is a low one,” State v. Roque, 213 Ariz. 193, ¶ 109, 141 P.3d 368, 396 (2006), and Rules 402 and 403 create a presumption in favor of admitting relevant evidence. We cannot overlook that it is a jury’s function to draw inferences from the evidence and determine its weight. State v. Godsoe, 107 Ariz. 367, 370, 489 P.2d 4, 7 (1971); State v. McGriff, 7 Ariz.App. 498, 501, 441 P.2d 264, 267 (1968). Thus, when a third-party defense is offered, it is primarily the jury’s role to assess whether the evidence creates a reasonable doubt as to the defendant’s guilt. Although trial courts play a somewhat overlapping role in evaluating the admissibility of this evidence,[4] they “must be careful not to ‘bootstrap [themselves] into the jury box via evidentiary rules.’ ” Machado, 224 Ariz. 343, ¶ 43, 230 P.3d at 1174, quoting State v. LaGrand, 153 Ariz. 21, 28, 734 P.2d 563, 570 (1987) (alteration in Machado). Our courts must bear in mind that threshold determinations of admissibility go too far *585 when the preclusion of evidence “infringe[s] upon the role of the jury and improperly insulate[s] the state’s evidence from critique.” State v. Lehr, 201 Ariz. 509, ¶ 29, 38 P.3d 1172, 1180 (2002).
¶24 As the majority correctly notes, we observed in Machado that the defendant is not entitled to “throw strands of speculation on the wall and see if any of them will stick.” 224 Ariz. 343, n. 11, 230 P.3d at 1172 n. 11, quoting David McCord, “But Perry Mason Made It Look So Easy!”: The Admissibility of Evidence Offered by a Criminal Defendant to Suggest that Someone Else is Guilty, 63 Term. L.Rev. 917, 984 (1996). In so stating, however, we did not mean to suggest that third-party culpability evidence must itself engender some level of certainty in the guilt of the third party to be admissible. Rather, the evidence in question must be permitted when it tends to make a reasonable-doubt defense more plausible. See State v. Prion, 203 Ariz. 157, ¶ 24, 52 P.3d 189, 193 (2002) (evidence must “ ‘tend to create a reasonable doubt as to the defendant’s guilt’ ”), quoting Gibson, 202 Ariz. 321, ¶ 16, 44 P.3d at 1004. Put another way, if the evidence in question would suggest a reasonable possibility that a person other than the defendant committed the crime, it should be admitted. Cf. State v. Portillo, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995) (approving instruction to jurors that “[i]f ... you think there is a real possibility that [the defendant] is not guilty, you must give him/her the benefit of the doubt and find him/her not guilty”).
¶ 25 Our courts have found third-party evidence irrelevant when it easts nothing more than suspicion against a class of people, e.g., Dann, 205 Ariz. 557, ¶ 36, 74 P.3d at 243, or reveals the bad character or criminal propensities of a person otherwise unconnected to the crime. E.g., Fulminante, 161 Ariz. at 252, 778 P.2d at 617; accord Machado, 224 Ariz. 343, n. 11, 230 P.3d at 1172 n. 11. In other words, something more than “a possible ground of suspicion against another” person is required. Prion, 203 Ariz. 157, ¶21, 52 P.3d at 193.
¶ 26 Here, however, Alvarez was prepared to offer more than proof that a landscaper with a prior felony conviction had some association with the victim. Indeed, the victim was prepared to testify that the landscaper had been present in the victim’s backyard on the morning of the burglary, and his normal duties would have involved his continued presence there for a substantial portion of the time the victim was absent. Because the victim was prepared to testify she had seen the landscaper upon her departure for work, a jury reasonably could have inferred the landscaper was likewise aware that she had departed and, because he had worked at her house on six to eight prior occasions, he presumably knew she was not likely to return anytime soon. Moreover, the landscaper was last seen by the victim in a fenced backyard area which gave ready access to the undisputed point of entry — the backdoor of the victim’s house. Finally, the victim would have testified the landscaper never returned to her house in the four years after the burglary.[5] Thus, the defense was prepared to offer evidence of motive (the landscaper’s prior felony for a property crime), presence (he was last seen in the backyard near the point of entry), opportunity (he was uniquely aware that the house was unoccupied), and temporal proximity. See Prion, 203 Ariz. 157, ¶¶ 19-25, 52 P.3d at 193-94 (finding trial court erred in precluding similar evidence when third-party suspect had “the opportunity and motive” to commit the crime, and was present in pertinent time window).
¶ 27 While such facts alone might be insufficient to convict the landscaper of the crime, they comfortably cleared the threshold of relevance in assessing who committed the burglary in question. Given that the state itself elicited that the victim departed for work in the morning and returned mid-afternoon, and that the state’s own case depended on inferences derived from items appearing and disappearing between her departure and arrival, the factual presentation of the case *586 seems remarkably incomplete in the absence of the evidence related to the landscaper’s presence during that time. As we observed in Machado, “a jury can ... be confused in its deliberations by the preclusion of relevant evidence” as much as by the admission of irrelevant evidence. 224 Ariz. 343, ¶ 22, 230 P.3d at 1169. Here, the trial court’s ruling only presented jurors with The Curious Case of the Casual, WelT-Hydrated Burglar, but the competing story Alvarez sought to tell was potentially explanatory as well as exculpatory.
¶ 28 Notably, the trial court did not articulate the reasons behind its Rule 401 and 403 rulings here, which is troubling given the low threshold under our rules for characterizing evidence as relevant, the jury’s presumptive primary role in evaluating the weight to be given evidence, and the minimal court time necessary to present the proffered evidence in this case.[6] In order to characterize that evidence as confusing or misleading, one would have to accept the truth of the state’s theory of the case (Alvarez’s guilt) as a threshold matter. But we do not assess the admissibility of third-party culpability evidence with the presumption that a defendant is guilty or that the evidence is only relevant if it directly rebuts the state’s theory of culpability.
¶29 At times, of course, the state’s evidence of a defendant’s guilt may be nearly dispositive, making alternative explanations preposterous and unreasonable. Some DNA evidence will surely fall into that category and cause appropriate skepticism of the relevance and probative value of third-party evidence under the Gibson and Prion standard. Here, for example, had the state found Alvarez’s DNA on the jewelry box or on the dresser where the jewelry was located, it would serve little purpose to alert the jury to the existence of alternate or additional suspects. At other times, however, DNA evidence will permit alternative, non-inculpatory explanations, and the existence of such evidence will not inform a court’s assessment of the relevance of the third-party evidence offered. I conclude the DNA evidence here falls in the latter category.
¶30 To be sure, the DNA found on the water bottle was substantial circumstantial evidence of guilt. It certainly allowed the jury to draw a reasonable inference that Alvarez had perpetrated the burglary or at least conspired with the person responsible. It was sufficient, in short, to allow a conviction that would withstand a challenge under Rule 20, Ariz. R.Crim. P. Cf. McGriff, 7 Ariz.App. at 501, 441 P.2d at 267 (concluding palm print provided sufficient circumstantial evidence of guilt). Yet the DNA evidence, when coupled with the proffered evidence of third-party culpability, also allowed alternative explanations that would not inculpate Alvarez.
¶ 31 As defense counsel argued in summation, the DNA test established only that Alvarez had drunk from the water bottle. It could not and did not establish where or when he had done so. It did not rule out that Alvarez had shared the water bottle with someone else or that another person had handled or used the bottle for some purpose after Alvarez. Indeed, the presence of a female’s DNA on the other bottle demonstrated that at least one other person drank from the bottles and was presumably on hand at some point during their handling.
¶ 32 Did the female, after departing from an innocent Alvarez, then proceed to act as an accomplice to the landscaper in the burglary with the bottles in tow? Did the landscaper keep the bottles from a prior work site to reuse them? Indeed, the presence of the bottles in the trash can and refrigerator suggests a burglar who was casual rather than urgent in his trespass, which would be consistent with a perpetrator who was confident in knowing the occupant would not soon return, much like the landscaper. And while it would seem odd for a random burglar to encumber himself with one or more water bottles while breaking into a home, it would be a rare landscaper who would fail to bring some water with him to a Tucson work site in August. In short, the landscaper evidence would have provided the jury both a potential alternate suspect in the burglary and a rea *587 sonable alternative inference regarding who brought the water bottles into the house.
¶ 33 Finally, even if one assumes that Alvarez’s DNA on the water bottle demonstrates his presence at the scene of the crime, the presence of others, like the landscaper, who might have invited him inside, would raise new questions about whether the fifteen-year-old Alvarez was aware entry had been forced and others intended to steal items from the house. Certainly, that the water bottles were so casually and conspicuously left behind might support an inference that the owners of the water bottles were not aware they occupied a crime scene.
¶ 34 In sum, Alvarez’s DNA on the water bottle was substantial, but not unassailable, evidence of guilt. In that context, evidence of another plausible perpetrator would have raised a number of other potential inferences consistent with Alvarez’s innocence. It is the function of the jury rather than the trial court, or this court, to weigh the reasonableness and plausibility of those inferences. Finally, as defense counsel strenuously argued before the trial court, the failure of the state to contact or investigate the landscaper strongly supported the defense argument that the state had simply conducted too little investigation, and presented too little evidence, to be entitled to a conclusion that it had eliminated all reasonable exculpatory inferences.
¶35 For those reasons, I would hold the proffered evidence was relevant, it was erroneously excluded by the trial court, and the error was not harmless beyond a reasonable doubt. The exclusion of the proffered third-party evidence here led the jury to assess the probative value of the DNA evidence in a different light than if they had known there was a person with a felony record for a property crime present on the victim’s property on the morning of the burglary — a person who, because of his job as a landscaper, had ready access to the ultimate point of entry and a unique awareness that the victim had departed for work.
¶ 36 I therefore respectfully dissent.

. See David McCord, "But Peiry Mason Made It Look So Easy!”: The Admissibility of Evidence Offered by a Criminal Defendant to Suggest that Someone Else is Guilty, 63 Term. L.Rev. 917, 984 (1996) (observing third-party culpability evidence creates problem without satisfying solution "because the preliminary question! ] the trial judge has to decide ... is the same basic issue the jury would have to decide if the evidence were admitted, i.e., whether the ... evidence gives rise to a reasonable doubt that the defendant committed the crime”).

. The record suggests he was never again specifically scheduled to return. However, we properly view excluded third-party culpability evidence in the light most favorable to its proponent, even when the evidence has been deemed irrelevant by the trial court. See Machado, 224 Ariz. 343, n. 1, 230 P.3d at 1164 n. 1.

. As demonstrated by Alvarez’s offer of proof, the entirety of the excluded evidence could have been presented by merely asking several of the state’s witnesses a few additional questions.