Argued at Pendleton October 28; reversed December 17, 1935;
rehearing denied January 14, 1936

## JACKSON ET AL. *v.* OREGON LUMBER CO.
(52 P. (2d) 189)

*H. B. Beckett,* of Portland (E. L. McDougal, Lawrence Lister, and Wilbur, Beckett, Howell & Oppenheimer, all of Portland, on the brief), for appellant.

*S. H. Burleigh,* of La Grande (Burleigh & Burleigh, of La Grande, on the brief), for respondents.

KELLY, J. On the 19th day of August, 1933, Dexter Jackson hauled a load of logs upon an auto truck from a point on Crawford creek a distance of about seven

miles to the town of Bates in Grant county, Oregon. He intended to unload the logs at defendant's unloading place at Bates, the same being a pond on the north bank of which two tracks of a narrow gauge railway had been constructed, over one of which tracks and extending several feet toward the pond a planked driveway had been placed. None of the witnesses, who testified, saw Jackson at the moment he was hurt. One of them, testifying in behalf of defendant, said that Jackson told him that he (Jackson) went under his truck to unfasten his chains; that he was loosening his chains, and, when he started to back out from under his truck, a log dropped off on him.

The planked driveway was constructed on the north bank of the pond out of eight or nine-foot logs sixteen inches through with a slope toward the pond for the unloaded logs to roll on.

Mr. Hawes, a witness for defendant, testified that on the morning of the accident, Jackson and he loaded their trucks in the woods together; that Jackson loaded ahead of Hawes; that Hawes followed Jackson in with his load and when Hawes got in, Jackson was hurt at the place of unloading. Hawes further testified that, when he arrived at the pond, Jackson was lying alongside of his, Jackson's, truck between the trailer and the rear wheel of the truck. The log had been taken off of Jackson's body. Except the one log, which fell upon and injured Jackson, the logs, comprising Jackson's load that morning, were still on the truck.

Mr. C. L. Chewning, a witness for defendant, testified that on the morning of the accident, he was on the south side of the pond, and heard an outcry. He then saw Jackson pinned down by the log and ran around the pond a distance of approximately 200 feet to render assistance. He found Jackson lying on the walk or

planking by the side of his truck about half way between the back wheel of the truck and the wheels of the semi-trailer with his head toward the rear of the truck. Mr. Chewning and another gentleman lifted the log off of Jackson.

Mr. John Scholtz, another witness for defendant, testified that on the occasion mentioned, he was working at the pond near the mill, a distance of five or six hundred feet from the place of the accident. He heard the outcry and when he arrived at the place, the log had been removed from Jackson's body. Mr. Scholtz testified that Jackson was lying alongside of the load on the platform between the trailer and the truck. Mr. Chewning and the gentleman, who assisted him, were still there when Mr. Scholtz arrived. This gentleman, who assisted Mr. Chewning in removing the log, was not further identified by any one testifying herein. Mr. Jackson died as a result of the injury sustained as above stated.

One of the specifications of negligence is the alleged failure and neglect of the defendant to furnish a reasonably suitable and safe place for deceased to work, it being charged that the unloading place was rough, unlevel and cut up. The other specifications of negligence are that deceased was required to work long hours and into the night so that he became mentally and physically exhausted, worn out and unable to properly look after and safeguard himself in carrying on his work, and was unable to avoid said log and get away from it.

■ There is nothing in the record tending to show that, during the loading of his truck in the woods on the morning of his accident, or at any time during the morning up and until the log fell upon him, Mr. Jackson appeared to be tired or exhausted.

Mr. Jackson began this hauling for defendant on August 7, 1933, on which day he hauled 10,640 feet; on August 8th, he hauled 12,080 feet; on the 9th, 9,610 feet; on the 10th, 11,160 feet; on the 11th, 12,840 feet, and on the 12th, 2,080 feet. The 13th was Sunday. On the 14th, he hauled 10,070 feet; on the 15th, 6,120 feet; on the 16th, he hauled 10,480 feet and on the 17th he hauled 8,607 feet. On the 18th, which was the day immediately prior to the day of the accident, he hauled 11,400 feet. The testimony shows that he might have made but four trips on the 18th, or he may have made five.

The testimony is conflicting as to the length of time required to make a round trip. Plaintiffs' witness testified that it would require from two to three hours. Defendant's witness, Hawes, said about an hour and 30 minutes. Hawes also testified that to load, it would require from 15 to 30 minutes, and about 10 minutes to dump the load if they had no trouble.

We find nothing to support the charge that deceased became exhausted and tired because of excessive hours of labor.

■ Mrs. Jackson testified that about a week, or possibly two weeks after the accident, she saw the unloading place and that,—

"it wasn't smooth. It would not be what you would call smooth. I don't know what you would call it, I don't know whether you would call it unusually rough; the one thing I noticed especially was, it seemed there was bark and things off of the logs that had been unloaded."

The amended complaint contains no reference to the presence of "bark and things off of the logs" hence, as ground of recovery that must be disregarded. As to the allegedly unsafe place to work, the amended

complaint charges that "because of the rough, unlevel and cut up condition of the ground, upon which defendant carelessly and negligently required the said Dexter H. Jackson to unload said logs, the said Dexter H. Jackson was unable to avoid said log," etc. There is nothing in the record to indicate that Mr. Jackson was on the ground at any time before he was hurt. All of the testimony on that point is to the effect that he was upon the planking between the rear wheel of the truck and the trailer.

In a word, there is nothing to support plaintiff's claim that the alleged negligence of defendant in failing to furnish a smooth and level place to unload said logs was the proximate cause of deceased's injury and death.

The motion of defendant for a directed verdict in its favor should have been sustained. The judgment of the circuit court is reversed and the cause remanded with directions to enter an order of dismissal.

BELT, ROSSMAN and BAILEY, JJ., not sitting.