NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JJAMAR FRANCSWAUR WASHINGTON, *Appellant.*

No. 1 CA-CR 13-0643
FILED 2-17-2015

Appeal from the Superior Court in Maricopa County
No. CR 2012-121459-001
The Honorable William L. Brotherton, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David Simpson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Thomas Baird
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Peter B. Swann joined.

---

**C A T T A N I**, Judge:

**¶1**　　　　JJamar Francswaur Washington appeals his conviction of second degree murder and the resulting sentence. For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　　A grand jury indicted Washington on a charge of second degree murder for intentionally shooting the victim with a shotgun. The night before the shooting, L.L., who had been staying at Washington's house in west Phoenix for over a week, saw Washington holding a shotgun while sitting in a car at the house. Washington told L.L. that he should leave because "there are going to be some problems."

**¶3**　　　　The next morning, L.L. and G.N.—who had stopped by to visit Washington—were sitting outside smoking marijuana when the victim stopped his car and began arguing with G.N. The victim got out of his car and started walking toward the two men.

**¶4**　　　　When the victim was nearly to the edge of the street, Washington came out of the house with the shotgun L.L. had seen the night before. Washington shot the victim in the abdomen without saying anything.

**¶5**　　　　Washington walked back into the house and told his girlfriend's daughter that he had just killed a man. Washington called 9-1-1 and told the dispatcher that six Hispanic men were in front of his house engaged in a gunfight. Meanwhile, G.N. and L.L. fled the scene. When G.N.'s girlfriend arrived at Washington's house later to pick up their young son, she heard Washington ask someone where he should hide the weapon.

**¶6**　　　　Washington was arrested the following day. He denied knowing the victim or shooting him, but he told a detective that he been set up by a Hispanic man from his past; Washington stated that the Hispanic man and his associates had held him captive for several days the previous

week, had stolen his car, and had been following him, making him paranoid.

¶7 A jury convicted Washington of second-degree murder, and the court sentenced him to a term of 22 years' imprisonment. Washington timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).[1]

## DISCUSSION

### I. Witnesses' Gang Affiliations.

¶8 Washington argues that the superior court abused its discretion and denied him his constitutional right to present a complete defense by excluding evidence of the witnesses' alleged gang affiliations. Washington argues that this evidence was necessary to support his defense that he did not shoot the victim, and that it was instead L.L. or G.N. who committed the offense. We review a superior court's evidentiary rulings on potential third-party culpability evidence for an abuse of discretion. *State v. Prion*, 203 Ariz. 157, 161, ¶ 21, 52 P.2d 189, 193 (2002).

¶9 A criminal defendant is constitutionally entitled to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation omitted). This right to present evidence is subject to restriction, however, by application of reasonable evidentiary rules. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998). "[T]he Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes v. South Carolina,* 547 U.S. 319, 326–27, 329–31 (2006) (internal punctuation and citations omitted).

¶10 Under Arizona law, the admission of third-party culpability evidence is governed by Evidence Rules 401 through 403. *State v. Machado*, 226 Ariz. 281, 284, ¶ 16, 246 P.3d 632, 635 (2011). To be relevant under Arizona Rule of Evidence 401, third-party culpability evidence "need only tend to create a reasonable doubt as to the defendant's guilt." *State v. Gibson*, 202 Ariz. 321, 324, ¶ 16, 44 P.3d 1001, 1004 (2002) (emphasis omitted). A defendant may not, however, "in the guise of a third-party culpability defense, simply 'throw strands of speculation on the wall and see if any of them will stick.'" *Machado*, 226 Ariz. at 284 n.2, ¶ 16, 246 P.3d

---

[1] Absent material revisions after the relevant date, we cite a statute's current version.

at 635 n.2 (citations omitted).  Moreover, third-party culpability evidence is subject to balancing under Arizona Rule of Evidence 403 and may thus be precluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  *See also Machado*, 226 Ariz. at 284 n.2, ¶ 16, 246 P.3d at 635 n.2.

**¶11**	Prior to trial, the State filed a motion in limine to preclude Washington from introducing testimony regarding any gang affiliations of witnesses, arguing that such testimony was irrelevant because at most the evidence suggested that G.N. hung out with gang members when he was younger, and because no evidence suggested that the victim was a member of a gang or that the shooting was gang related.

**¶12**	Washington's counsel conceded that he had no definitive evidence that the victim was affiliated with any gang, but argued that a car club to which the victim belonged could have been affiliated with a gang, G.N. could have viewed a red bandana and a Dallas Cowboys lanyard in the victim's car as gang indicia, or the victim could have been vehemently anti-gang.  Counsel argued that any of these circumstances could have provided a motive for the victim to initiate the hostilities and for G.N. to shoot the victim.  The superior court granted the State's motion to preclude, finding the gang connection "too tenuous."

**¶13**	The court nevertheless allowed Washington's counsel to question the witnesses outside the presence of the jury to offer proof of gang affiliation or motivation.  In response to this questioning, L.L. denied any involvement in gangs; the victim's brother denied that his brother's car club had any gang affiliation, but said he was not sure if it was anti-gang; G.N. said he was not a gang member and did not know anything about gangs in the west Phoenix neighborhood where the shooting occurred, although he had flashed gang signs in pictures he posted online, and, years before, he had associated with members of the Vista Blood gang in south Phoenix; G.N.'s girlfriend testified that G.N. had been associated with the Bloods gang when he was in high school in Coolidge, but not in Phoenix; and one of Washington's neighbors testified that he had never heard that anyone at Washington's house was a gang member.

**¶14**	The court then reaffirmed its decision, noting that the offers of proof primarily centered on G.N.'s past and showed very little evidence of gang affiliation, and that "[t]here was virtually nothing with regard to the victim about anything that came out that there was any type of gang affiliation or anything like that."

**¶15** Under these circumstances, the superior court did not abuse its discretion or deprive Washington of the opportunity to present a complete defense by precluding evidence of the witnesses' gang affiliations (if any). *See Gibson*, 202 Ariz. at 324, ¶ 16, 44 P.3d at 1004. Absent evidence that the victim was affiliated with a gang (or was vehemently anti-gang) or that the victim's argument with G.N. had any relationship to gangs, the evidence that G.N. had previously associated with a gang would not have tended to create a reasonable doubt as to Washington's guilt. This evidence was more in the nature of "strands of speculation" offering "only a possible ground of suspicion against another," an insufficient basis to introduce it. *See Machado,* 226 Ariz. at 284 n.2, ¶ 16, 246 P.3d at 635 n.2; *State v. Bigger*, 227 Ariz. 196, 209, ¶ 44, 254 P.3d 1142, 1155 (App. 2011).

**¶16** Washington's additional argument that G.N.'s gang affiliation was relevant to show that other witnesses might have been intimidated into implicating Washington fails because there was no evidence or proffer of evidence suggesting that G.N. intimidated any witnesses. Washington speculates—for the first time on appeal—that G.N.'s gang affiliation would have made him "more willing than the ordinary person to resort to violence," and would explain why L.L. (who was not in a gang) would have joined G.N. in shooting the victim and blaming Washington, who, according to the presentence report, was a documented Crips gang member. But L.L. had been staying with Washington and there was no evidence of a dispute between him and Washington or between Washington and other witnesses. Thus, Washington's attenuated speculation regarding witness intimidation would not have tended to create a reasonable doubt as to Washington's guilt or otherwise made gang evidence admissible.

## II. Washington's Paranoia.

**¶17** Washington next argues that the superior court abused its discretion by allowing the State to introduce evidence of his paranoia at the time of the shooting. Washington asserts that the court essentially permitted the State to present impermissible character evidence to prove actions in conformity therewith. *See* Ariz. R. Evid. 404(a). We apply an abuse of discretion standard in reviewing the superior court's decision to admit evidence. *State v. Dann*, 220 Ariz. 351, 368, ¶ 89, 207 P.3d 604, 621 (2009).

**¶18** The State asserted at trial that Washington's statements to the detective after his arrest—that he was paranoid about a former cellmate he believed was coming after him—suggested a motive for an otherwise-

unexplainable shooting. After reviewing the transcript of Washington's videotaped interview, the court referenced Washington's belief that a former cellmate suspected Washington had "snitched him off on a robbery," and that Washington was concerned that this person "was after him," that people were passing his home, and that the former cellmate and his associates "may be out to get him." The court ruled that Washington's statements regarding his own paranoia were admissible, but ordered them sanitized to remove any indication that he had been incarcerated.

¶19　　　The court did not abuse its discretion by admitting Washington's statements to show his motive for the shooting. Washington's self-admitted paranoia was not offered to show a character trait to prove action in conformity therewith. Rather, the admissions were offered for the relevant and permissible purpose of showing Washington's state of mind and motive for an otherwise unexplained murder of a stranger. *See State v. Hargrave*, 225 Ariz. 1, 8, ¶ 14, 234 P.3d 569, 576 (2010) ("[M]otive is relevant in a murder prosecution"). Nor was the use of the term "paranoia" unfairly prejudicial, given that it was Washington himself who repeatedly used this word to describe his state of mind before the shooting. The State's argument that Washington's admitted paranoia was an "irrational fear of something or someone that doesn't exist" that supplied the motive for an otherwise unexplained murder was a reasonable argument based on the evidence at trial, including the witnesses' descriptions of Washington shooting the victim without saying anything and Washington's description of his paranoia and the circumstances that gave rise to it. Accordingly, the court did not abuse its discretion by admitting Washington's statements that he was paranoid, and the State's characterization of paranoia as a motive for the shooting was not improper.

## III.　Closing Argument.

¶20　　　Washington argues that the prosecutor engaged in misconduct by asserting during rebuttal closing argument that if G.N. had shot the victim, it would make no sense for L.L. to get into the car with him and flee the scene. Washington contends that evidence of a shared gang affiliation (or, alternatively, fear of G.N.'s gang affiliation) would have explained L.L.'s conduct, and that the prosecutor's argument therefore unfairly took advantage of the court's earlier ruling precluding reference to gang ties.

¶21　　　Prior to closing argument, Washington filed a motion in limine seeking in part to preclude the prosecutor from "arguing that no evidence existed where evidence had merely been precluded." Washington

did not object, however, during closing argument to what he now argues was an improper statement by the prosecutor.

¶22 Assuming without deciding that Washington's motion in limine adequately preserved this issue, we conclude that Washington has not established error. To determine whether a prosecutor's remarks were improper, we consider (1) whether the remarks called to the attention of jurors matters they would not be justified in considering, and (2) the probability that the jurors were influenced by the remarks. *State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000). To warrant reversal, the defendant must show "that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Morris*, 215 Ariz. 324, 335, ¶ 46, 160 P.3d 203, 214 (2007) (citation omitted). "Prosecutorial misconduct constitutes reversible error only if (1) misconduct exists and (2) 'a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *Id.* (citation omitted).

¶23 The prosecutor did not engage in misconduct by arguing that it would make no sense for L.L. to flee the scene with G.N. if G.N. had just killed a person. Defense counsel had suggested during closing argument that either G.N. or L.L. was the real killer. The prosecutor's rebuttal was responsive to this argument, and the prosecutor's suggestion that L.L. would not have jumped into G.N.'s car and fled the scene with him had he just seen G.N. murder the victim was based on a common-sense inference drawn from the evidence presented. Moreover, as the superior court recognized, the argument did not take unfair advantage of the pre-trial ruling precluding gang evidence because there was no evidence that the victim was a gang member, that L.L. was a gang member (much less a member of the same gang with which G.N. had associated), or that the shooting was gang-motivated. Accordingly, the prosecutor's argument was not improper and simply directed the jurors to draw a reasonable inference from the evidence. *See State v. Buccheri-Bianca*, 233 Ariz. 324, 328–29, ¶¶ 12–15, 312 P.3d 123, 127–28 (App. 2013).

**CONCLUSION**

¶24      Washington's conviction and sentence are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama