NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GARY LEE BRANDEBERRY, JR., *Appellant.*

No. 1 CA-CR 18-0006
FILED 6-18-2019

Appeal from the Superior Court in Navajo County
No. S0900CR201300509
The Honorable Robert J. Higgins, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist III.
*Counsel for Appellee*

Elizabeth Hale, Lakeside
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which
Presiding Judge Michael J. Brown and Judge Kenton D. Jones joined.

**T H O M P S O N**, Judge:

¶1	Gary Lee Brandeberry, Jr. (defendant) appeals from his convictions and sentences for four counts of child molestation, class 2 felonies, one count of sexual abuse, a class 3 felony, and one count of indecent exposure, a class 6 felony. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY[1]

¶2	Defendant lived with long-time family friends, B.B. (father) and J.L. (mother) at their home in Navajo County for about a month in the spring of 2013. Father and mother had two daughters, T.B., eleven years old, and H.B., nine years old (the girls). T.B. and H.B. called defendant "Uncle Gary," and father and mother often left them in defendant's care. While alone with the girls, defendant played a "game" with them called "Below the Waist" which entailed defendant making a circle with his hand and placing it on his body below the waist, sometimes on his penis, in order to get the girls to look at his penis. Defendant also "de-pantsed" the girls. On multiple occasions, defendant pulled down H.B.'s pants and underwear, exposing her vagina. On at least one occasion, he pulled down T.B.'s pants.

¶3	Defendant exposed part of his buttocks to H.B. on two occasions. Another time, when H.B. was alone outside with defendant, defendant grabbed her by the hips and "dry-humped" her from behind. H.B.'s arm was behind her back, and she could feel his penis, which she described as a "lump." Later that day, defendant told H.B. he thought she wanted to see his penis. H.B. said no, and because she was worried that defendant would expose himself to her anyway, she asked if his pants were up. Defendant said they were, but when H.B. looked at defendant his penis was hanging out of his open zipper. H.B. ran away but defendant demanded she come back. He sat H.B. on his lap and stated that if she told her father he would not believe her. On six separate occasions defendant touched H.B.'s vagina over her clothes.

¶4	Defendant exposed part of his buttocks to T.B. on one occasion. He then looked down inside her underwear, purportedly to see her tan line. Defendant also pinched T.B.'s nipples through her clothing

---

[1]	We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

after pretending not to know she had breasts. Defendant told T.B. that she would not be believed if she told her parents what had taken place.

¶5         On or about the day before Easter 2013, T.B. told mother about defendant's behavior. Father confronted defendant and ordered him to leave. Mother and father called the sheriff. Shortly after defendant left, he contacted mother and father on Facebook and told them that he had nude photos of mother. Father found that several cell phone memory cards were missing from the home. Father viewed defendant's Facebook message as a threat.

¶6         The state charged defendant with indecent exposure, a class 6 felony, four counts of child molestation, class 2 felonies, and sexual abuse, a class 3 felony. After a jury trial, defendant was convicted as charged. The jury found two aggravating factors. First, that the victims suffered emotional harm and second, that defendant took advantage of his position of trust as the victims' caretaker. The trial court sentenced defendant to one year in prison for count 1, seventeen years in prison each for counts 2-5, and five years in prison for count 6. The court ordered defendant to serve the sentences for counts 1-5 concurrently but consecutive with the sentence for count 6. Defendant timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1) (2019), 13-4031 (2019), and -4033(A)(1) (2019).[2]

## DISCUSSION

¶7         Defendant raises one issue on appeal: whether the trial court violated his due process right to a fair trial by excluding evidence he wished to present at trial.

### A. Evidence Precluded Under Rape Shield Law

¶8         Defendant first argues that the trial court erred when it precluded his testimony about alleged sexual behaviors of H.B. under the rape shield law.

¶9         Prior to defendant's testimony, defense counsel proffered that defendant would testify that H.B. grabbed his penis and stared at his penis

---

[2]       We cite to the current version of any statute unless the statute was amended after the pertinent events and such amendment would affect the result of this appeal.

on two separate occasions, and that he did not tell father and mother because he did not want her to get in trouble. The state objected, arguing that testimony about H.B.'s prior sexual behavior should be precluded under the rape shield statute. Defense counsel argued that H.B.'s alleged sexual behaviors were not prior sexual conduct but instead, "the act that the State is trying to prove." The court held that defendant could testify that H.B. touched his penis of her own volition.

¶10    After taking the stand, defendant testified that H.B. saw his penis when he was outside urinating. During this testimony, the court granted defense counsel's request for a bench conference. Defense counsel stated that he anticipated the state would object to his next question, which would result in defendant testifying that H.B. was trying to look at his penis and would not stop looking at it. The state objected to the proposed testimony, arguing that it was not admissible under the rape shield law, and the trial court agreed. The court stated that it was permissible for defendant to testify that H.B. saw his penis while he was urinating "but nothing more."

¶11    At a subsequent bench conference, defense counsel told the court he anticipated defendant would testify that H.B. intentionally shoved or grabbed him in the crotch, and that is how H.B. ended up touching his penis. The state again objected on the basis of the rape shield law. Defense counsel stated that he was not going to ask defendant the question about crotch grabbing because "it never really is clear about when this . . . penis grabbing or whatever you want to call it was going on . . . I guess I'm not going to ask this question because I can't get it into context." Counsel did ask defendant whether he ever made H.B. touch his penis and he denied having done so.

¶12    Defendant argues on appeal that he should have been permitted to testify that he caught H.B. staring at his penis because that is why he began playing the "Below the Waist" game with the girls. He further claims that the court's preclusion of his testimony about H.B.'s alleged sexual behavior directed at him denied him his right to a fair trial.

¶13    We review a trial court's decision to preclude evidence under the rape shield law for an abuse of discretion. *State v. Herrera*, 232 Ariz. 536, 549, ¶ 38 (App. 2013) (citation omitted). An abuse of discretion occurs when "the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Arellano*, 213 Ariz. 474, 478, ¶ 14 (2006) (citation omitted).

¶14         Arizona's rape shield statute, A.R.S.   § 13-1421 (2019), excludes reputation and opinion evidence "relating to [a] victim's chastity" unless the evidence falls under five listed exceptions.  A.R.S. § 13-1421(A). As applicable here, evidence of a victim's past sexual conduct with a defendant is admissible under section 13-1421(A)(1) "only if a judge finds the evidence is relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence . . . ."  *Id.*

¶15         We find no abuse of discretion in the trial court's decision precluding defendant from testifying that H.B. stared at his penis.  The proposed evidence was not relevant because a victim of child molestation cannot consent to the crime.[3]  *See State v. Rice*, 110 Ariz. 210, 212 (1973). Further, the court would have been well within its discretion to conclude that defendant's testimony that nine-year-old H.B. was sexually interested in him was more prejudicial than probative.

¶16         As to the proposed testimony about the alleged crotch-grabbing, defense counsel chose not to ask the question.  Accordingly, there was no abuse of discretion by the court.

## B.  Third-Party Culpability Evidence

¶17         Defendant next argues that the trial court erred when it denied him the right to present third-party culpability evidence. We review the court's evidentiary rulings for an abuse of discretion.  *State v. Davolt*, 207 Ariz. 191, 208, ¶ 60 (2004).

¶18         Prior to trial, defendant sought to introduce evidence that 1) father hit the girls, 2) father threatened to kill their dog, 3) father strangled H.B. for not doing her chores, 4) mother and father grew marijuana in H.B.'s bedroom, 5) defendant witnessed father entering a bathroom where the girls were showering wearing nothing but his underwear, and 6) defendant witnessed father touching H.B.'s nipples.  Defendant also sought to have a CPS caseworker testify that CPS had received a phone call alleging that father was molesting the girls and that mother and father had been under CPS supervision for several years due to abuse and neglect allegations. (Id.).  The trial court denied defendant's pre-trial motion.  The court first noted that it had previously ruled that evidence of prior sexual abuse of the

---

[3]  We find defendant's argument that the evidence was relevant to explain why he played a game where he encouraged the girls to look at parts of his body below the waist unpersuasive.

girls would not be admitted because of the rape shield statute. The court then concluded that "whether or not the victims' parents abused them does not have any tendency to make it more or less likely that [defendant] sexually abused them." The court further noted that although father had been investigated by CPS for abuse or neglect, the allegations were unsubstantiated and the anonymous phone call to CPS was hearsay and highly untrustworthy.[4]

¶19 At a bench conference prior to defendant's testimony, defense counsel stated that defendant wanted to testify that he saw mother molest T.B. The court noted that it had already ruled that evidence of past abuse of the victims was precluded, and defendant argued that the state had opened the door by presenting expert testimony about the signs and symptoms of abuse victims.[5] The court concluded that it had not "heard anything new in the testimony by the expert that would lead [the court] to believe that [evidence of abuse by mother or father was] more relevant than . . . when [the court] ruled that it shouldn't be admitted."

¶20 Though constitutionally protected, a defendant's right to present a defense is not without limitations. *United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions."). Defendants are still beholden to the trial court's application of ordinary evidentiary restrictions. *State v. Hardy*, 230 Ariz. 281, 291, ¶ 49 (2012) (citations omitted). As with all litigants, defendants must show that proffered evidence is both relevant under Arizona Rules of Evidence (Rule) 401 and 402, and its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" under Rule 403. *See* Ariz. R. Evid. 401 (evidence is relevant if it has "any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action"), 402 (irrelevant evidence is inadmissible), 403 (balancing test). *See also State v. Machado*, 226 Ariz. 281, 283, ¶ 14 (2011) ("The admission of third-party culpability evidence is governed by the standards of Rules 401 through 403 of the Arizona Rules of Evidence. . . ."). "Evidence offered to establish the culpability of a third party is relevant under Rule 401 only

---

[4]  Defendant later claimed in a pleading that he was the one who called CPS.

[5]  The expert witness was a "cold" expert, meaning that she knew nothing about the victims or the facts of this case before testifying.

when it 'tends[s] to create a reasonable doubt as to the defendant's guilt.'" *Id.* at 284 n. 2, ¶ 16 (quoting *State v. Gibson*, 202 Ariz. 321, 324, ¶ 16 (2002)).

**¶21** Defendant argues that evidence of father's alleged sexual abuse was relevant because it "tended to negate the guilt of [defendant]." We disagree. None of the evidence defendant sought to introduce, including evidence about alleged physical, emotional, or sexual abuse by mother or father, CPS involvement with the family, or marijuana growing was relevant to the question of whether defendant committed the crimes he was charged with. And the evidence of alleged sexual abuse by father and/or mother was further properly excluded under A.R.S. § 13-1421(A). We find no abuse of discretion.

## C. Evidence Relating to Defendant's Fabrication Defense

**¶22** Finally, defendant argues that the trial court erred when it denied his motion to present evidence related to a fabrication defense. Prior to trial, defendant filed a motion to admit other acts evidence pursuant to Rule 404(b). Defendant sought to admit evidence of mother and father's case with CPS, father's alleged physical and verbal abuse of the girls, mother's prison sentence, and mother and father's drug abuse. Defendant argued that the evidence was relevant to show that the parents and the girls "had the motive and plan" to make sex crimes allegations against him.

**¶23** In response, the state noted that Rule 404(b) did not apply and that the court should analyze defendant's proposed other acts evidence under Rules 401-403.[6] *See Machado*, 226 Ariz. at 283, ¶ 14 (Rule 404(b)'s "central purpose is to protect criminal defendants from unfair use of propensity evidence."). The trial court denied the motion, finding that whether or not mother and/or father abused the girls physically or sexually was not relevant to whether defendant committed his alleged crimes, and that it was "unclear what the causal connection between the parents' drug abuse and their motive to fabricate allegations against [defendant] would be."

**¶24** Defendant filed a motion for reconsideration describing the evidence he wished to present as follows:

> 1. A statement in the CPS records from a
> February 2011 report that "[b]oth children have

---

[6] In a motion for reconsideration, defendant agreed that Rules 401-403 were applicable rather than Rule 404(b).

fears about being taken away by CPS, as CPS has been involved in the past."

2. Defendant's testimony that three days before he left the family home he told father he was going to call CPS and report that mother and father were abusing the children and growing marijuana in the children's closet.

3. The fact that CPS had frequent interactions with the family.

4. Defendant witnessed father physically abusing the children.

5. Defendant observed the parents growing marijuana in the children's closet.

After oral argument, the court denied the motion for reconsideration.

¶25    We find no abuse of discretion. Although a defendant has a constitutional right to present a theory of defense, he does not have the right to present that theory with whatever evidence he chooses. *State v. Carlson*, 237 Ariz. 381, 393, ¶ 36 (2015) (citation omitted). The link between defendant's proffered evidence and his fabrication defense was highly speculative and the court properly excluded it.

## CONCLUSION

¶26    For the foregoing reasons, defendant's convictions and

sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA