NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ROBERT ADRIAN EVANS, *Appellant.*

No. 1 CA-CR 23-0299

FILED 10-08-2025

Appeal from the Superior Court in Maricopa County
No. CR2018-001703-001
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's, Phoenix
By Alice Jones
*Counsel for Appellee*

Ortega & Ortega PLLC, Phoenix
By Alane M. Ortega
*Counsel for Appellant*

Robert Adrian Evans, Eloy
*Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**         Robert Adrian Evans appeals his conviction and sentence for first-degree murder. Counsel for Evans filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), stating that she found no arguable question of law. Counsel asks us to search the record for any arguable issues. Evans filed a supplemental brief, raising several issues that we address in this decision. Finding no reversible error, we affirm Evans's conviction and sentence.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**         In October 2017, Albert's (a pseudonym) skeletal remains were found in the desert near Casa Grande. A medical examiner noted two gunshot wounds to the head and found a .22 caliber bullet inside the skull. Detectives interviewed multiple friends and acquaintances of Albert, and investigated Marcela Leyva, who was a co-defendant in this case and who later pled guilty to second-degree murder.

**¶3**         The State charged Evans with premeditated first-degree murder, and the case proceeded to a 15-day jury trial. The evidence presented at the trial established the following. Albert was friends with Leyva and Leyva's boyfriend. Albert and the boyfriend got into a fight and stopped talking to each other. The police later arrested the boyfriend on an outstanding warrant, and he blamed Albert for his arrest as retribution for the fight.

**¶4**         While in jail, Leyva's boyfriend called her multiple times and told her to "take care of [Albert]" with Evans's help, meaning to kill him. Leyva knew Evans as her boyfriend's "enforcer" who collected money

---

[1]     We view the evidence in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against the defendant. *See State v. Fierro*, 254 Ariz. 35, 38, ¶ 2 (2022).

owed to him. Leyva discussed the request with Evans, who was willing to help.

¶5        Leyva re-established a friendship and relationship of trust with Albert so she and Evans could kill him. On February 19, 2017, Albert came to Leyva's apartment to buy drugs. After Albert entered the apartment, Evans came out of the bedroom and shot him in the abdomen with a .22 caliber handgun. Evans then retrieved a .22 caliber Ruger brand rifle and shot Albert two more times. He and Leyva placed Albert's body in a dresser and loaded it into a truck. Leyva then took the body to the desert and set it on fire.

¶6        At the close of the State's case-in-chief, Evans moved for a directed verdict, which the superior court denied. Evans called several witnesses, including Albert's apartment manager, who testified he last saw Albert on February 24, 2017.

¶7        During jury deliberations, Juror 1 shared extrinsic information about a Ruger .22 rifle with other jurors. Evans moved for a mistrial. After questioning each juror, the court denied Evans's mistrial request and replaced Juror 1 with an alternate juror and the reconstituted jury began deliberations anew.

¶8        The jury found Evans guilty as charged. The superior court sentenced him to natural life with 1,916 days of presentence incarceration credit.[2] The court also ordered $1,120 restitution for Albert's funeral expenses.

¶9        Evans appealed. We have jurisdiction under A.R.S. §§ 12-120.21(A), 13-4031, and 13-4033.

---

[2]        The court awarded Evans an extra day of presentencing credit. He was incarcerated on April 16, 2018, and sentenced on July 14, 2023. When calculating presentencing credit, the sentencing date is excluded. *State v. Hamilton*, 153 Ariz. 244, 246 (App. 1987). But we will not correct an illegal sentence that favors a defendant without a cross-appeal from the State. *State v. Dawson*, 164 Ariz. 278, 281–82, 85-86 (1990).

## DISCUSSION

¶10          Evans raises several issues in his supplemental brief.

**A.    The Superior Court Properly Instructed the Jury on Accomplice Liability.**

¶11          Evans argues the superior court erred by instructing the jury on accomplice liability. At trial, the State asked for an accomplice liability instruction after Evans requested a third-party culpability instruction. Over Evans's objection, the superior court provided both instructions to the jury. The third-party culpability instruction required the jury to find Evans not guilty if they had a reasonable doubt about whether Evans committed the murder because a third party may have committed it. The accomplice liability instruction stated that a defendant is criminally liable for another's conduct if the defendant acted as the other's accomplice. The instruction defined "accomplice" as a person who, "with the intent to promote or facilitate the commission of the offense," (1) solicited or commanded another to commit the offense, (2) aided, counseled, agreed to aid, or tried to aid the other person in planning or committing the offense, or (3) provided another with the means or opportunity to commit the offense.

¶12          During deliberations, the jury asked the following question:

> Jury instructions (p. 6) say[] "The State has the burden of proving that the Defendant is the person who committed the alleged crime." The instructions (p. 7) also say "A defendant is criminally accountable for the conduct of another if the defendant is an accomplice . . . [.]" So can we conclude that an accomplice caused the death of another person? Is an accomplice guilty of first degree murder?

Evans asked the court to refer the jury to the instructions rather than answer the question. Denying Evans's request, the superior court answered the question as follows:

> If all twelve of you find that the State proved beyond a reasonable doubt that the Defendant committed First Degree Murder or that the Defendant was an accomplice to First Degree Murder, you must find him guilty. If all twelve of you find that the State failed to prove beyond a reasonable doubt that the Defendant committed First Degree Murder or that the Defendant was an accomplice to First Degree Murder, you must find him not guilty.

¶13        Evans first argues that the superior court erred by providing an accomplice liability instruction because he was not charged as an accomplice to murder. We disagree. "There is no requirement that the indictment charge appellant as an accomplice in order to permit a jury instruction to that effect." *State v. McInelly*, 146 Ariz. 161, 162 (App. 1985) (citation omitted).

¶14        Evans next argues the superior court should not have given the accomplice liability instruction because the State only alleged that he committed the murder, not that he acted as an accomplice. He also contends the court should not have answered the jury question but should have directed them back to the instructions or asked them to decide whether he was an accessory before or after the fact. Evans argues that the instruction and the court's answer to the question misled the jury, and the jury could have convicted him based on his mere presence.

¶15        We review the superior court's rulings on jury instructions and responses to jury questions for an abuse of discretion. *State v. Aragón*, 252 Ariz. 525, 528, ¶ 6 (2022) (instructions); *State v. Manuel*, 229 Ariz. 1, 8, ¶ 35 (2011) (questions). We review *de novo* whether the court properly instructed the jury, *State v. Champagne*, 247 Ariz. 116, 130, ¶ 22 (2019), and "whether [the] jury instructions properly state the law," *State v. Payne*, 233 Ariz. 484, 505, ¶ 68 (2013).

¶16        Each party is entitled to jury instructions on "any theory of the case reasonably supported by the evidence," *Champagne*, 247 Ariz. at 137, ¶ 60 (quoting *State v. Bolton*, 182 Ariz. 290, 309 (1995)), but a jury instruction is improper if it misleads the jury, *see State v. Kuhs*, 223 Ariz. 376, 384, ¶ 37 (2010). "We consider the jury instructions as a whole to determine whether the jury received the information necessary to arrive at a legally correct decision." *State v. Dann*, 220 Ariz. 351, 363, ¶ 51 (2009) (citation omitted).

¶17        We reject Evans's arguments for three reasons. First, the record includes sufficient evidence supporting the accomplice liability instruction, and the State's position that Evans committed the murder did not prevent jurors from deciding he acted as an accomplice. *See State v. McNair*, 141 Ariz. 475, 480 (1984) ("[A]n accomplice may be either the principal or an accessory to the crime."). And because Evans argued Leyva committed the murder, jurors could reasonably conclude from the evidence both that Leyva was the perpetrator and that Evans acted as her accomplice. *See State v. Lang*, 176 Ariz. 475, 486 (App. 1993) (An accomplice liability instruction was appropriate when the State presented "some slight

suggestion that more than one person was at the victim's house" at the time of murder, and the defendant "posited that two people might have been involved.").

¶18 Second, the overall instructions correctly informed jurors that they could not find Evans guilty if he were simply present at the crime scene or if he acted as an accessory after the fact. The court gave jurors a "mere presence" instruction, clarifying that accomplice liability could not depend solely on Evans's presence at the scene. *See State v. Noriega*, 187 Ariz. 282, 286 (App. 1996) ("[A] mere presence instruction provides a necessary aid to jurors in properly interpreting the acts of the accused accomplice and divining his true intent."). Further, the accomplice liability instruction given by the court did not encompass an accessory after the fact. *See State v. Johnson*, 215 Ariz. 28, 34, ¶ 26 (App. 2007) (An accomplice is different from an accessory after the fact because "[t]o be an accomplice, a person's first connection with a crime must be prior to, or during, its commission; it cannot be after the commission of the offense." (quotation omitted)).

¶19 Finally, the court correctly answered the jury question by explaining how the jury should apply the accomplice liability instruction. *See State v. Newell*, 212 Ariz. 389, 403, ¶¶ 68–69 (2006) (Jurors are presumed to follow the given instructions.). The superior court thus did not abuse its discretion in instructing the jury on accomplice liability.

## B. Jury Arguments

### 1. Evans Failed to Show that Juror 14 Needed to be Removed.

¶20 Evans argues the superior court erred by refusing to strike Juror 14 for cause. During voir dire, Juror 14 stated her husband was being investigated for sexual abuse of her minor daughter, and the State would prosecute him if he was charged with a felony. Evans's counsel asked whether she could be fair and impartial, given that the same agency was also involved in Evans's case. Juror 14 said she could be fair and impartial. Evans moved to strike Juror 14 for cause, which the superior court denied. Evans contends the court should have granted the motion to strike because Juror 14 "was working with [the State] to prosecute her husband" and "was argumentative with [defense counsel]."

¶21 The superior court must "consider the totality of a prospective juror's conduct and answers given during voir dire" and must excuse a prospective juror if "there is a reasonable ground to believe that the juror . . . cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b), 18.5(h). The court has broad discretion to excuse or retain a potential juror.

*See State v. Jimenez*, 255 Ariz. 550, 553, ¶ 8 (App. 2023); *see also State v. Acuna Valenzuela*, 245 Ariz. 197, 210, ¶ 30 (2018) ("[W]e defer to the decision of the trial judge who actually heard the testimony and observed the juror's demeanor."). As the party challenging the court's failure to strike a juror for cause, Evans bears the burden of establishing that Juror 14 could not be fair and impartial. *See Acuna Valenzuela*, 245 Ariz. at 209, ¶ 21.

**¶22** Considering deference to the court's opportunity to observe the proceedings and Juror 14's unqualified assurances and explanations of why she could be fair and impartial, Evans fails to show the superior court abused its discretion by refusing to strike her for cause.

## 2. Evans Shows No Prejudice in the Jury Seeing Him in Handcuffs.

**¶23** Evans argues the superior court erred by not *sua sponte* declaring a mistrial after the jury saw him in handcuffs because "it was prejudicial to [his] innocence."

**¶24** At trial, Evans told his counsel the jury saw him in handcuffs while he was being escorted to the courtroom by a detention officer. The court asked Evans's counsel if he wanted the court to speak to the jury about the incident. Evans's counsel asked the court to make sure it would not happen again.

**¶25** "[T]he inadvertent exposure of a handcuffed or shackled defendant to members of the jury outside the courtroom is not inherently prejudicial, and a defendant is not entitled to a new trial absent a showing of actual prejudice." *State v. Speer*, 221 Ariz. 449, 462, ¶ 74 (2009) (quotation omitted). The crucial question is "whether the defendant was prejudiced by what the jury saw, not the mere fact that it was seen." *State v. Johnson*, 147 Ariz. 395, 399 (1985). Evans fails to show he suffered prejudice. Though the court offered to question the jury about the incident, Evans refused to examine the jury further. Having rejected that offer, Evans cannot now claim error. *See Speer*, 221 Ariz. at 463, ¶ 76 (A defendant cannot claim error for inadvertent handcuff exposure to a juror when the defendant rejected the court's offer to replace that juror with an alternate.). The superior court did not abuse its discretion by not declaring a mistrial.

## 3. Evans Did Not Show Prejudice from Juror Misconduct.

**¶26** Evans argues the superior court erred by denying his motion for a mistrial after Juror 1 shared extrinsic information with other jurors.

¶27	At the trial, Leyva testified that Evans's Ruger .22 caliber rifle had a clear stock. During deliberations, Juror 1 told other jurors that he did some research and learned that clear stocks were available for that model of gun. Evans moved for a mistrial, arguing Juror 1's misconduct misled the jury with false information about the gun's manufacture. The court questioned each juror individually about the information Juror 1 shared. Eight jurors acknowledged hearing the information, but all stated they could disregard it and base their verdict solely on the evidence presented during the trial. Some also said they warned Juror 1 that he "can't do that." The court denied Evans's request for a mistrial and replaced Juror 1 with an alternate juror and directed the reconstituted jury to begin deliberations anew.

¶28	We review the denial of a motion for a mistrial based on juror misconduct for an abuse of discretion. *State v. Slover*, 220 Ariz. 239, 245, ¶ 19 (App. 2009). Juror misconduct requires a new trial if the defense shows actual prejudice, or if prejudice may be fairly presumed from the facts. *State v. Cruz*, 218 Ariz. 149, 210, ¶ 68 (2008).

¶29	Although the jury received extrinsic information, the record does not show that information tainted the verdict. Along with the jurors' assurances, the court reminded them of the previous admonitions and instructed them to disregard prior deliberations and start anew with the alternate. We presume the jury followed those instructions. *See Newell*, 212 Ariz. at 404, ¶ 69. Thus, the court did not abuse its discretion by denying Evans's motion for a mistrial.

### 4.	The Court did not Abuse its Discretion by Denying Jury Interviews.

¶30	After the jury returned the verdict, Evans requested to interview the jurors to determine whether they had been influenced by the information shared by Juror 1. The superior court denied Evans's request, reasoning that it "did question each and every juror, [and] gave counsel an opportunity to ask follow-up questions." Evans now argues the superior court violated his due process rights by denying his request to interview the jury.

¶31	If the validity of a verdict is challenged based on juror misconduct, "the court may receive the testimony or affidavit of any witness, including members of the jury, that relates to the conduct of a juror, a court official, or a third person." Ariz. R. Crim. P. 24.1(d). We review the superior court's decision on whether to hold such a hearing for an abuse of

discretion. *See State v. Spears*, 184 Ariz. 277, 289 (1996). We find no abuse of discretion because the superior court examined each juror before the verdict and allowed Evans to ask any follow-up questions. Further, no juror seemed to be influenced by the extrinsic information. *See id.* (The court found no hearing was needed when nothing in the record suggested the jury used the extrinsic evidence during deliberation.).

## C. Evans Did Not Show Prosecutorial Misconduct.

**¶32** Evans argues that the State committed prosecutorial misconduct by allowing Leyva to present allegedly inaccurate testimony.[3] To prevail on a prosecutorial-error claim, a defendant must show error exists and that there is a reasonable likelihood the error could have affected the jury's decision. *State v. Montoya*, 258 Ariz. 128, 142, ¶ 10 (2024).

**¶33** The record does not show any misconduct in the State's questioning of Leyva, and Evans offers no proof that the prosecutor knowingly elicited any false testimony from her. As a result, although Evans couches this claim as one of "prosecutorial misconduct," it is essentially a challenge to the sufficiency of evidence. Ultimately, "[t]he credibility of witnesses is an issue of fact to be resolved by the jury; as long as there is substantial supporting evidence, we will not disturb their determination." *State v. Harrison*, 111 Ariz. 508, 509 (1975). By convicting Evans, the jury resolved the issue of witness credibility in favor of the State. And ample record evidence substantiates the jury's finding.

## D. Evans Presents No Grounds for Illegal Search Warrants.

**¶34** Before trial, Evans moved to suppress all evidence derived from the searches of his Facebook account, alleging "the warrants were not supported by probable cause, were not supported by oath or affirmation, were overly broad, and failed to specify the evidence to be seized." At a hearing on his motion to suppress, the court expressed concern that the motion did not specify any issues with the warrants, and Evans agreed that the motion should be denied so he could refile it. The superior court then denied the motion, but Evans did not refile it. Evans now challenges the court's decision about the search warrants for his Facebook account and

---

[3] Evans asserts Leyva gave false testimony about: (1) Leyva and Evans drove by the victim's house to plan the murder; (2) the crime happened at 3 a.m.; (3) the weather was rainy during the murder; and (4) Evans shot the victim with a Ruger 11/22 rifle.

phone records, arguing the warrants were invalid under *Franks v. Delaware*, 438 U.S. 154 (1978).

¶35 We review the court's ruling on a motion to suppress evidence for an abuse of discretion. *State v. Cruz*, 218 Ariz. 149, 161, ¶ 47 (2008). A search warrant is presumed to be valid, and a challenge to its sufficiency must be more than conclusory or speculative. *Frimmel v. Sanders*, 236 Ariz. 232, 239, ¶ 30 (App. 2014). Thus, "a defendant must make specific allegations of deliberate falsehoods or reckless disregard for the truth, with reference to the relevant portion of the warrant, and support the allegations with a detailed offer of proof and statement of supporting reasons." *Id.*

¶36 We find no error. Evans's motion did not describe what portions of the affidavit were allegedly false, nor did it reveal how the warrants lacked specificity, were unsupported by probable cause, or were not supported by oath or affirmation. Evans thus fails to show that the search warrants were unlawful.

**E. Any Error in Denying Admission of Other-Acts Evidence was Harmless.**

¶37 During Evans's cross-examination of Leyva, he asked:

Q. [Y]ou ended up getting arrested sometime in 2018 on this case; is that right?

A. Yes.

. . .

Q. And you had a gun on you, correct?

A. Yes.

Q. And you held that gun in a manner that was threatening the police such that they threatened to use lethal force against you, correct?

A. No, I didn't.

[The State]: Objection.

¶38 The State argued Leyva's statements about holding a gun during the arrest were irrelevant and inadmissible as other-act evidence. Evans counter-argued that the statements were relevant to show Leyva was

the one who shot Albert because she was a violent person. The court sustained the State's objection, finding the statements inadmissible under Arizona Rule of Evidence 404(b) because Evans intended to show Leyva's propensity for violence. Evans now argues the superior court erred in precluding evidence of Leyva's other act.

**¶39** We review the superior court's decision to admit or reject other-acts evidence for an abuse of discretion. *State v. Villalobos*, 225 Ariz. 74, 80, ¶ 18 (2010). "The admission of third-party culpability evidence is governed by the standards of Rules 401 through 403 of the Arizona Rules of Evidence, not by Rule 404(b)," the central purpose of which is to "protect criminal defendants from unfair use of propensity evidence." *State v. Machado*, 226 Ariz. 281, 283–84, ¶¶ 14, 16 (2011). When a defendant seeks to admit third-party culpability evidence, "the proffered evidence must first be relevant; that is, it must '*tend* to create a reasonable doubt as to the defendant's guilt.'" *State v. Goudeau*, 239 Ariz. 421, 460, ¶ 163 (2016) (quoting *State v. Gibson*, 202 Ariz. 321, 324, ¶ 16 (2002)). And the court may properly exclude even relevant evidence "if its probative value is substantially outweighed by the danger of 'unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Id.* (quoting Ariz. R. Evid. 403).

**¶40** Here, the superior court misapplied Rule 404(b) to determine the admissibility of Leyva's other act. Applying Rules 401 through 403, however, we reach the same result. *See State v. Carlson*, 237 Ariz. 381, 387, ¶ 7 (2015) (We will affirm the superior court's ruling if the result was legally correct for any reason.). Leyva's statements about holding a gun during the 2018 arrest were not relevant to the charged offense and do not support Evans's theory that Leyva murdered Albert. Ariz. R. Evid. 401; *see State v. Dann*, 205 Ariz. 557, 569, ¶ 36 (2003) (A court does not abuse its discretion by finding evidence irrelevant because it did not create a reasonable doubt about a defendant's guilt.). We thus conclude the other-act evidence was irrelevant or, at the least, it might have misled or confused the jury, and find no error in its preclusion.

**¶41** And even if the preclusion of that evidence constituted error, such error would be harmless. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005) ("Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence."). The jury heard testimony that Leyva possessed two guns, an AR-15 and a .40 caliber gun, and that she regularly carried the .40 caliber gun. The jury also heard that Leyva sometimes practiced shooting out of the back window of her apartment. Thus, the jury heard evidence of

Leyva's gun usage supporting Evans's third-party culpability defense theory.

## F. The Court Could Deny the Use of Leyva's Plea Statement.

**¶42** Evans argues the superior court erred by precluding him from impeaching Leyva with her plea statement. Leyva entered into a plea agreement with a testimonial component. Leyva's counsel prepared a document titled "Statement of [Leyva]" based on counsel's meetings with Leyva during plea negotiations. The State then disclosed the plea statement and video recordings of plea negotiations to Evans. Before trial, the State moved to preclude Evans from impeaching Leyva with the plea statement, but not the video recordings. Over Evans's objection, the superior court granted the State's motion, finding the plea statement was not sufficiently established as Leyva's own statement to allow it to be used for impeachment purposes. Evans challenges the court's decision, asserting Leyva adopted the plea statement under Arizona Rule of Evidence 801 by submitting it to the State.

**¶43** We review the superior court's decision about the scope of cross-examination for an abuse of discretion. *State v. Hernandez*, 232 Ariz. 313, 321, ¶ 37 (2013). "Prior inconsistent statements may be used to impeach the credibility of a witness, and such statements may be proven by extrinsic evidence." *Id.* at 322, ¶ 41; Ariz. R. Evid. 613(b)(2). "'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Ariz. R. Evid. 801(a). Further, an opposing party's statement is not hearsay if "the party manifested that it adopted or believed [it] to be true." Ariz. R. Evid. 801(d)(2)(B).

**¶44** We discern no error. First, Leyva was not an opposing party in this case. *See* Ariz. R. Evid. 801(d)(2)(B). Second, the plea statement was not Leyva's own statement because Leyva's counsel prepared it, and it was not Leyva's dictated or verbatim statements. *See* Ariz. R. Evid. 801(a). In any event, the court allowed Evans to use the video recordings to impeach Leyva.

**¶45** Thus, the superior court did not abuse its discretion by precluding Evans from impeaching Leyva with the plea statement.

## G. Any Hearsay Errors were Harmless.

**¶46** Evans argues the superior court erred in sustaining a hearsay objection to some of the investigating detective's testimony.

¶47      At trial, the detective testified that he responded to a missing person report and spoke with the person who reported Albert missing. Evans asked the detective what that person had told him about how long Albert had been missing. The State objected on hearsay grounds, which the superior court sustained. Evans argued the court erred by sustaining the State's hearsay objection. But he later called the same individual to the stand and asked when he had last seen Albert, and he answered. Ultimately, Evans elicited testimony from the individual about when he had last seen Albert without hearsay concerns. Thus, any conceivable error was necessarily harmless.

¶48      Evans also objected to testimony from another detective as hearsay. The State examined the detective and inquired into the date that Samantha (a pseudonym) reported to the detective as the last date the witness saw Albert. Samantha had testified before in the trial to the specific date, February 19, 2017, and Evans cross-examined Samantha on her multiple statements to police with conflicting dates and on her drug use around February 19, 2017. Evans objected to the detective's testimony on hearsay grounds, and the court overruled the objection as an exception to hearsay under Arizona Rule of Evidence 801(d)(1)(B)(i). The court permitted the detective to testify that Samantha reported the date as February 19, 2017. The court did not err by overruling Evans's hearsay objection because the detective could provide the date to rebut an inference that Samantha fabricated her testimony and to show that her testimony was consistent. Ariz. R. Evid. 801(d)(1)(B)(ii); *see also State v. Granados*, 235 Ariz. 321, 328–29, ¶¶ 30-34 (App. 2014).

¶49      Still, the admission of the detective's testimony, if erroneous, constituted harmless error because that testimony was cumulative of Samantha's testimony, and the detective and Samantha were subject to cross-examination. *State v. Williams*, 133 Ariz. 220, 226 (1982) ("[E]rroneous admission of evidence which was entirely cumulative constitute[s] harmless error."); *State v. Yonkman*, 233 Ariz. 369, 376–77, ¶ 27 (App. 2013) (Alleged errors were harmless because the witnesses were subject to cross-examination and any error did not affect the verdicts.).

## H.      Evans's Remaining Arguments Fail.

¶50      Evans also raises several factual issues related to evidence presented at trial and witness testimony. Those issues are questions for the jury as the fact-finder. *See State v. Cid*, 181 Ariz. 496, 500 (App. 1995) ("The finder-of-fact, not the appellate court, weighs the evidence and determines the credibility of witnesses.").

## I. Our Review Reveals No Reversible Error.

**¶51**        Along with evaluating the arguments raised in Evans's supplemental brief, we have conducted an independent review of the record. Our review revealed no reversible error. *See Leon*, 104 Ariz. at 300 ("An exhaustive search of the record has failed to produce any prejudicial error."). All proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. Counsel represented Evans, and he was present at all critical stages of the proceedings. Ariz. R. Crim. P. 6.1, 19.2. The record shows that the jury was properly comprised of 12 jurors. *See* A.R.S. § 21-102(A); Ariz. R. Crim. P. 18.1(a). The superior court properly instructed the jury on the elements of the charged offenses, the State's burden of proof, the need for a unanimous verdict, and the presumption of innocence. The evidence presented at trial was sufficient to support the jury's verdicts. The court received a presentence report. Ariz. R. Crim. P. 26.4. The court allowed Evans to speak at sentencing, imposed a sentence within the statutory limits, stated on the record the evidence and factors it considered in imposing the sentence, and ordered a reasonable amount of restitution for Albert's funeral expenses. *See* A.R.S. §§ 13-1105(A)(1), -752, -801, -804; Ariz. R. Crim. P. 26.9, 26.10.

## CONCLUSION

**¶52**        We affirm Evans's conviction and sentence.

**¶53**        Upon the filing of this decision, defense counsel shall inform Evans of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984).



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR